## Thomas vs. Fish and others.

Where a party applied for a loan of money, which was agreed to be loaned to him upon usury, and he agreed to obtain his brother's bond and mortgage to secure the loan and the usurious premium, and the borrower thereupon forged a bond and mortgage upon his brother for the amount, and transferred it to the lender and received the money thereon, deducting the usurious premium; *Held,* that the lender could not recover back the money lent upon usury by reason of such fraud; and that the brother, whose name had been forged, was not liable for a part of the money which had been applied to pay off an incumbrance upon his property, he not being privy to the forgery.

Where a security is not valid as between the parties, but is made for the mere purpose of being sold at a discount of more than legal interest, it is not valid in the hands of the purchaser who buys it for less than the amount; although he is ignorant of the object for which it was made, and supposes it is a valid security in the hands of the person from whom he receives it at a discount. But the party who obtains the money, upon the false representation that the security is valid and justly due, will be liable to refund the money thus fraudulently obtained. And he will also be liable to a criminal prosecution for obtaining the money by false pretences, and with an intent to defraud.

Where the purchaser of a chose in action parts with his money upon an agreement which he knows to be illegal and usurious, he cannot recover back the money from the borrower on the ground that the latter has palmed upon him a forged security.

April 5.

THIS was an appeal from a decree of the vice chancellor of the eighth circuit. The facts in the case, as presented by the pleadings and proofs, were substantially as follows : E. C. Fish applied to the complainant for a loan of money, and told him he could obtain from his brother H. A. Fish a mortgage on his farm, for $2000, which he would transfer to the complainant for whatever sum he would pay or advance for a bond and mortgage of that amount. It was finally agreed between them that the complainant should advance him $1700, for such a bond and mortgage, payable in five years with annual interest ; of which sum the complainant paid to Lent $1050, to take up a previous mortgage upon the same premises which Lent then held, and the residue of the $1700 was paid to E. C. Fish upon his producing and assigning to the complainant a bond and

mortgage, for the $2000, purporting to have been executed by H. A. Fish and wife to the assignor and payable in five years with annual interest as agreed upon. The complainant afterwards found that this bond and mortgage, as well as the certificate of acknowledgment endorsed thereon, had been forged by E. C. Fish; and that instead of obtaining an extra premium of $300 for the amount advanced on these securities, he was in danger of losing the whole amount. He thereupon filed his bill in this cause, stating these facts, and charging that the previous mortgage, which was genuine, was paid off with the monies thus advanced upon these forged securities, with the knowledge, consent, and advice of the defendant H. A. Fish, and with a full knowledge of all the circumstances. He, therefore, prayed that the discharge of the previous mortgage might be delivered up and cancelled and that he might have the benefit of that mortgage as a security for the amount which was advanced by him towards the payment of the same to Lent. The defendant H. A. Fish put in his answer, denying all collusion with his brother in obtaining satisfaction of the previous mortgage, or that he knew any thing of the forgeries or the obtaining of the money from the complainant upon the forged securities, until he was informed thereof, by a letter from his brother, about a year afterwards. He also stated in his answer that the first bond and mortgage was made and loaned to his brother for the sole purpose of enabling him to raise money thereon, for his own benefit, and that he promised to pay and discharge the same, so as to save him harmless. The cause was heard upon pleadings and proofs as to the defendants H. A. Fish and wife. And the vice chancellor decided that, as the complainant had been imposed upon by a forged bond and mortgage, the agreement upon which the money had been advanced was not usurious. He, therefore, declared and decreed that the complainant was to be considered as the owner of the $1000 bond and mortgage, and that the discharge thereof and the record of such discharge be cancel-

CASES IN CHANCERY.

led and declared void. From this decree H. A. Fish and wife appealed.

*S. Stevens,* for the appellant.

*R. J. Hilton,* for the respondent.

THE CHANCELLOR. If the respondent in this case had advanced his money upon the purchase of a forged bond and mortgage, under an agreement which would have been valid if the securities had been genuine, I should have no difficulty in affirming the vice chancellor's decree; although I think he erred in supposing that the answer was not evidence in favor of the appellants, to establish the fact that the $1000 mortgage was loaned to E. C. Fish, and that he was in equity bound to see it paid. The bill called for an answer on oath in relation to the giving of that mortgage; and charged that the payment to Lent was known to H. A. Fish at the time it was made, and was for his benefit. And it also contained a special interrogatory requiring the defendants to answer when, where, *how and upon what terms and conditions* the same was given. The answer, therefore, was directly responsive to this interrogatory, in stating how and upon what terms and conditions that mortgage was given.

The decree, however, is based upon the ground that the mortgage was in fact paid off for the benefit of the appellants, and with monies which had been feloniously obtained from the respondent; and that the latter is, therefore, in equity entitled to be substituted in the place of Lent, in relation to the securities which he gave up to the felon upon the receipt of the money. There is nothing in the case from which it can be inferred that E. C. Fish had any other means of paying the $1000 mortgage, or that it would have been paid by him if the money obtained from Thomas had not been so applied. That money was, therefore, in fact appropriated for the benefit of the appellants, to discharge an incumbrance for which their property was

legally holden ; although the brother was, as between him-self and them, equitably bound to pay off and discharge the same. If the vice chancellor was right then in supposing that this money was not advanced by Thomas upon an usurious agreement, but had been obtained from him under circumstances which would authorize him to follow it into the hands of any person who had not received it bona fide and upon a valuable consideration, in the same manner as if the same had been stolen from him by E. C. Fish, the decree is undoubtedly right. It therefore becomes ne-cessary to inquire whether the statute of usury altered the rights of the respondent in this respect.

It is perfectly well settled that the owner of a bond and mortgage, or any other evidence of debt, which is a valid and available security in his hands, may sell it at a discount, or below its actual value, in the same manner he can sell any other property, if such sale is not intended by the parties as a mere cover for an usurious loan. On the other hand, if such evidence of debt was void for usury in its inception, or was made for the purpose of being sold at an usurious discount, it will not be a valid security in the hands of a purchaser thereof although he is ignorant of the illegal purpose for which it was made. But as the purchaser cannot be guilty of making an usurious bargain where he is deceived by the seller as to the facts which are necessary to constitute the usury, there are some cases where such purchaser may recover back the money paid to the vendor on such sale, upon the ground that he has been actually defrauded in the sale of an invalid security. And in such a case the seller, who has obtained money from the purchaser upon a false and fraudulent representation that the evidence of debt thus sold was a good and availa-ble security, and was not tainted with usury, nor made for the purpose of being sold at an usurious discount, would be guilty of a felony in obtaining the money by these false and fraudulent pretences, and upon a security which was of no value to the purchaser. Where money or other property is thus fraudulently and feloniously obtained from

CASES IN CHANCERY.

the purchaser of a chose in action, although he purchased at a discount, the title to his money or property is not changed until it gets into the hands of some one who has received it without notice of the fraud, and for a valuable consideration.

But where the purchaser of a chose in action parts with his money upon an agreement which he knows to be usurious and void, and in violation of the laws of the state, he cannot legally be said to be defrauded, so as to entitle him to recover back his money from the borrower upon usury who has in fact palmed off upon him a forged security. Here the complainant shows, in his bill, that he knew perfectly well that the bond and mortgage upon which he was about to advance his money were not good and available securities in the hands of the nominal vendor, but were made to be sold at an usurious discount; and for the express purpose of carrying into effect this contract to advance $1700 for a bond and mortgage for $2000 and interest, to be made by the appellants, and to be lent to the person who was to receive the money on this usurious contract. He was, therefore, bound to know that securities thus made and transferred, even if made by the appellants, would be as absolutely void in his hands as the forged bond and mortgage in fact were. For in neither case could he recover any thing upon those securities, if the appellants should think proper to make a defence. The money, therefore, having been advanced under an illegal and usurious agreement, I conclude that the appellants, who had no knowledge of or participation in the forgery, or in the usurious contract which induced E. C. Fish to perpetrate it, cannot be compelled to refund that money to the usurer, although it has been appropriated to their benefit, without their agency.

The decree appealed from must, therefore, be reversed; and the bill, as to the appellants, must be dismissed with costs.